IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PRESSURE SPECIALIST, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18 C 7013 |
| ) | |
| NEXT GEN MANUFACTURING INC., and ) | |
| CARL J. BONTA, JR., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In October 2018, Pressure Specialist, Inc. filed the present lawsuit against Next Gen Manufacturing Inc., and its owner, Carl Bonta, Jr., alleging that Next Gen was making and selling a pressure regulator device that infringes one of Pressure Specialist's patents. In December 2018, the parties stipulated to a preliminary injunction barring Next Gen from producing or selling the accused device or any device "not more than colorably different" from that device. Next Gen then made a new pressure regulator, which Pressure Specialist now contends infringes the same patent and runs afoul of the preliminary injunction.

Pressure Specialist has moved for a finding of contempt against Next Gen for violating the injunction, or alternatively, to amend the preliminary injunction to bar Next Gen from making and selling the newly accused regulator. The Court held an evidentiary hearing on the motion. This constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(2).

**Background**

Pressure Specialist manufactures and sells air pressure regulators for paintball guns that use compressed air to fire projectiles. A regulator provides a connection between a compressed air canister and a paintball gun; it reduces the pressure of air from the canister so that it can enter the paintball gun to facilitate firing.

Pressure Specialist owns U.S. Patent No. 7,059,343 (the '343 patent). It has alleged in a previous lawsuit and in this lawsuit that Next Gen was making and selling, and continues to make and sell, pressure regulators that infringe claim 1 of the '343 patent.

Claim 1 recites "a direct acting pressure regulator" with the following limitations that are central to the parties' dispute: "a body having a high pressure inlet and defining a seat," "a bonnet engageable with the body to define a piston chamber," and "a spring for urging the piston to the open regulator condition." '343 patent, col. 5 ll. 46-52, col. 6 ll. 4-5. According to the patent's specification, the body element attaches to a pressurized air canister and has an inlet allowing pressurized air to enter the chamber of the regulator. The air passes through the body and enters the chamber through a feature called a "seat." Inside the regulator chamber, a piston alternates between a closed condition, in which it makes contact with the seat and stops gas flow into the regulator chamber, and an open condition, in which the piston does not make contact with the seat and allows gas flow into the chamber. Air entering the chamber passes through the piston and out of the regulator through the bonnet.

In September 2017, Pressure Specialist sued Next Gen, alleging that it was making and selling an air pressure regulator that infringed two of Pressure Specialist's

patents, including the '343 patent. The parties settled in May 2018. In the settlement agreement, Next Gen agreed not to challenge, "in any court or other tribunal," the validity or enforceability of either of the patents Pressure Specialist alleged it infringed. Pl.'s Opening Br., Ex. 2 (dkt. no. 59) ¶ 4. Next Gen also "waive[d] all invalidity and unenforceability defenses" relating to those two patents in "any future litigation, arbitration or other proceeding." *Id.*

In October 2018, Pressure Specialist brought the present lawsuit against Next Gen and its president and owner Carl Bonta, Jr., alleging that a new pressure regulator sold by Next Gen, called the "Gen II," infringed the '343 patent. In December 2018, the parties stipulated to entry of a preliminary injunction, which the Court approved and entered. This order included a finding—agreed to by Next Gen—that Pressure Specialist had established a likelihood of success on the merits that the Gen II infringed the '343 patent. The order enjoined Next Gen from manufacturing or selling the Gen II or any regulator "that is not more than colorably different" from the Gen II.

Next Gen then began making and selling a new pressure regulator, the HAYMKR. Pressure Specialist alleges that the HAYMKR also infringes the '343 patent and is not more than colorably different from the Gen II. Pressure Specialist has asked the Court to hold Next Gen in contempt for violating the preliminary injunction order. Alternatively, Pressure Specialist has asked the Court to amend the preliminary injunction to specifically enjoin production or sale of the HAYMKR regulator. On December 6, 2019, the Court held a hearing on Pressure Specialist's motions. Both sides submitted affidavits and documentary evidence. The only live testimony offered at the hearing came from Bonta. The Court apologizes for its inordinate delay in issuing a

decision.

## Discussion

### A. Governing standards

#### 1. Contempt

Civil contempt is a "severe remedy" that "should not be resorted to where there is a *fair ground of doubt* as to the wrongfulness of the defendant's conduct." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801-02 (2019) (quoting *Calif. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609, 618 (1885)). In deciding whether a defendant in a patent case is in contempt of an injunction order, courts follow the two-step analysis set forth by the Federal Circuit in *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc). *See Proveris Sci. Corp. v. Innovasystems, Inc.*, 739 F.3d 1367, 1370 (Fed. Cir. 2014). The first step requires determination of whether the newly accused product is "not more than colorably different" from the product previously found to infringe. *Id.* at 1370. If the differences are more than colorable, then contempt is not the appropriate remedy, and the patent holder must bring a new claim of infringement. *See id.* at 1371. If, on the other hand, the differences are not more than colorable, then the court proceeds to the second step, which requires determination of whether the newly accused product "in fact infringes the relevant claims." *Id.* "The patentee bears the burden of proving violation of the injunction by clear and convincing evidence, a burden that applies to both infringement and colorable differences." *TiVo*, 646 F.3d at 883.

#### 2. Preliminary injunction

As indicated, Pressure Specialist has alternatively moved to amend the preliminary injunction order to preclude Next Gen from manufacturing and selling the

4

HAYMKR. In deciding a motion for a preliminary injunction in a patent case, a district court applies Federal Circuit law, rather than regional circuit law, because ruling on this motion "involves substantive matters unique to patent law." *Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525 (Fed. Cir. 2012).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). "To obtain a preliminary injunction, a party must show that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The first two factors—likelihood of success on the merits and irreparable harm—are the most critical in a patent case, and a court may deny a motion for a preliminary injunction if "a party fails to establish *either* of the[se] two critical factors." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994).

**B.     Infringement**

The Court begins (and ends) with the question of infringement, a showing of which—albeit by different standards—is required for both a finding of contempt and issuance of a preliminary injunction.

To show likelihood of success on the merits for the purposes of a preliminary injunction, a plaintiff "must prove that success in establishing infringement is more likely

than not." *Trebro*, 748 F.3d at 1166.[1] Assessment of the likelihood of infringement involves two steps: first, a court determines the scope and meaning of the claims asserted, and second, it compares the properly construed claims to the allegedly infringing device. *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1339 (Fed. Cir. 2003). To infringe, the accused device must embody every claim limitation in the patent or its equivalent. *Id.*

### 1. Claim construction

The first step, claim construction, is an issue of law. *Id.* To determine the meaning of a claim term, a court must first review intrinsic evidence, which includes—in the order of importance—the language of the claim, the specification, and, if in evidence, the prosecution history. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). "Claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from that meaning." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1370 (Fed. Cir. 2003). The ordinary meaning is determined from the perspective of a person having an ordinary level of skill in the relevant field, at the time of the invention. *See Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016). And "the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.

---

[1] To establish a likelihood of success on the merits, a plaintiff must ordinarily also show that its patent is valid and enforceable. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350-51 (Fed. Cir. 2001). Pressure Specialist need not do so, because Next Gen committed in the 2018 settlement agreement not to challenge the validity or enforceability of the '343 patent "in any future litigation." Pl.'s Opening Br., Ex. 2 (dkt. no. 59) ¶ 4.

Cir. 2005) (en banc). It is therefore "entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317.

The parties dispute the meaning and scope of three limitations of claim 1 of the '343 patent: (1) "a body having a high pressure inlet and defining a seat"; (2) "a bonnet engageable with the body to define a piston chamber within the body and the bonnet, the bonnet having a regulated gas outlet"; and (3) "a spring for urging the piston to the open regulator condition." With respect to the first of these limitations, the parties dispute in particular the meaning of the phrase, "body . . . defining a seat." Next Gen argues that a "body . . . defining a seat" requires a "one-piece body which forms, integrally, a seat." Defs.' Resp. Br. (dkt. no. 62) at 10. Pressure Specialist contends that the term "defining a seat" means that the body is "a structure that contains the seat." Dec. 6, 2019 Tr. (dkt. no. 74) at 22:4-23.

The language of this limitation, "a body having a high pressure inlet and defining a seat," sets forth two characteristics of the body. The first—undisputed by the parties—is that the body "ha[s] a high pressure inlet." The specification explains that the body has an "inlet port" through which the gas from the pressurized canister enters the regulator device. '343 patent, col. 3, ll. 50-52.

The parties' dispute concerns the meaning of the phrase "defining a seat." Claim 1 does not offer a definition of the seat, but the patent specification refers to the seat in two contexts. First, the seat is the point of "entry into the . . . chamber" for pressurized air. '343 patent, col. 3, l. 52. Second, the specification explains that the seat interacts with the "plug portion" of the piston to block flow of pressurized air into the regulator

7

chamber. '343 patent, col. 3, ll. 57 - col. 4, l. 9. Thus, based on the claim language read in light of the specification, the "seat" is the feature that is the point of entry for pressurized air into the regulator chamber and that interacts with the piston to stop the flow of air into the chamber.

Turning to the phrase "defining a seat," various forms of the word "define" appear throughout the '343 patent specification and other limitations of claim 1, and these suggest that "defining," as used in claim 1, means forming. *See, e.g., Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1074 (Fed. Cir. 2018) (construing "extending between" in claim based on use of different derivations of the phrase "extend between" in the patent specification). For example, another limitation of claim 1 is "a bonnet engageable with the body to define a piston chamber," indicating that the bonnet and the body together form a piston chamber. In addition, the specification uses the phrase "the wall that defines the plug chamber" to describe the wall that forms a part of the plug chamber. '343 patent, col. 4, ll. 7-8. The specification also refers to "a gap. . . defined between the [piston] plug and the chamber wall," which is a reference to a discrete space formed by these two features of the regulator. *Id.*, col. 3, ll. 64-65. Thus, the language of claim 1 and the patent specification support construing the phrase "body defining a seat" to mean that the body forms a seat feature.

Pressure Specialist proposes that the limitation "body defining a seat" means that the body "contains" a seat. This seems to the Court to change the meaning of the phrase, effectively reading the word "defining" out of the limitation, and yielding the following: "a body having a high pressure inlet and . . . a seat." An interpretation that renders a term of a claim superfluous is disfavored. *See Akzo Nobel Coatings*, 811

8

F.3d at 1340. And Pressure Specialist has offered nothing that suggests the word "defining" is understood in any relevant field to mean "containing."

Pressure Specialist argues that interpreting claim 1 to require a body "forming a seat" improperly reads an additional limitation into the claim: a requirement that the body and seat be a single piece. The Court disagrees. Its construction of the body limitation does not require the body and the seat to be a single piece. It simply requires the body to form, or outline, the seat to some degree. This is consistent with the patent's use of the word "defining" in the specification and other claim limitations. Another limitation of claim 1 is a "bonnet engageable with the body to define a piston chamber." There, the bonnet and the body together "define" the piston chamber; neither does so exclusively. Similarly, the specification refers to a gap "defined between the [piston] plug and the chamber wall," to describe a space formed by two features of the regulator. '343 Patent, col. 3 ll. 64-65.

In sum, "body having a high pressure inlet and defining a seat" means a body having a high pressure inlet and forming a feature that is the point of entry of pressurized air into the regulator chamber and that interacts with the piston to stop the flow of air into the chamber.

The Court notes that its construction of the "body . . . defining a seat" claim limitation at this early stage of the litigation is not a final determination but rather is a tentative construction for the purposes of deciding the current motions. The Court has the authority to modify the construction as the case proceeds and the parties present "a full[er] picture of the claimed invention and prior art." *See Sofamor Danek Grp., Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996); *see also Jack Guttman, Inc.*

9

*v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002).

Having construed the body limitation of claim 1, the Court need not construe the bonnet or spring limitations, because, as explained below, the HAYMKR does not embody the properly construed body limitation.

### 2. Comparison of the '343 patent and the HAYMKR

A device may infringe a patent either literally or under the doctrine of equivalents. A device literally infringes "if every limitation recited in the claim appears in the accused product, i.e., the properly construed claim reads on the accused product exactly." *Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1382 (Fed. Cir. 2000). A device that does not literally infringe may still infringe under the doctrine of equivalents, which "requires that the accused product contain each limitation of the claim or its equivalent." *Id.* at 1383. "An element in the accused product is equivalent to a claim element if the differences between the two are 'insubstantial' to one of ordinary skill in the art." *Id.*. "Infringement under the doctrine of equivalents requires an intensely factual inquiry." *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) (quoting *Vehicular Tech. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1381 (Fed. Cir. 2000)).

Pressure Specialist has not shown that it is more likely than not that it can establish that the HAYMKR literally infringes the '343 patent. In particular, the HAYMKR does not embody the limitation requiring the body to form a seat, that is, a feature that is the point of entry of pressurized air into the regulator chamber and that interacts with the piston to stop the flow of air into the chamber. The feature of the HAYMKR that serves these two functions is the jet. The jet feature is entirely distinct from the body of

the HAYMKR, which is the piece that has a high-pressure inlet and connects to the pressurized air canister. The body may contain the seat (i.e. the jet), but it does not appear to form the seat. In short, Pressure Specialist has not shown that it is likely to succeed on its contention that the body piece of the HAYMKR forms the seat or any part of it.

Pressure Specialist argues alternatively that the HAYMKR contains this claim limitation by way of the doctrine of equivalents. In particular, it contends that NextGen merely took a single piece and split it into two separate pieces (the body plus a separate jet) that together perform the same function as the seat defined by the body as disclosed in claim 1 of the patent.

Establishing infringement by way of the doctrine of equivalents requires showing that "the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1364 (Fed. Cir. 2007). This is a highly factual inquiry that involves considerations such as prosecution history or whether the modification in the accused device offers advantages over the claimed invention. *See Stumbo*, 508 F.3d at 1364-65; *K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1368 (Fed. Cir. 1999).

The Court declines to make an infringement finding based on the doctrine or equivalents on the current record. The doctrine of equivalents is disfavored as the basis for a preliminary injunction, because "[t]hat highly factual inquiry rarely comes clear on a premature record." *Jeneric/Pentron, Inc.*, 205 F.3d at 1382; *see also Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 866 (Fed. Cir. 2017) (observing that it is

11

unusual for a court to grant a preliminary injunction based on infringement under the doctrine of equivalents).

The only evidence (aside from visual comparison) that Pressure Specialist has offered on this point is the declaration of its employee Raymond Trimble, who has eighteen years of paintball industry experience. Trimble states that the HAYMKR jet engages with the plug portion of the piston "in the precise same manner as recited in [c]laim 1 of the '343 patent." Pl.'s Opening Br., Ex. 5 (dkt. no. 58-5) ¶ 24. Trimble also states that when the jet element "is secured to the body" in the course of normal use, it "becomes part of the body" and therefore embodies a "body defining a seat." *Id.* ¶ 34.

Pressure Specialist's evidence is insufficient to support a finding that the jet and body of the HAYMKR infringe, by equivalents, the body limitation of claim 1. Trimble does not explain, for example, how the results of the operation of the HAYMKR jet compare to those of the seat disclosed in the '343 patent. Of course, Pressure Specialist may later be able to present evidence showing that the HAYMKR infringes by equivalents. But at this time, based on Trimble's limited declaration, the Court cannot conclude that Pressure Specialist has shown the HAYMKR likely embodies, by way of the doctrine of equivalents, the body limitation of claim 1 of the '343 patent.

In sum, Pressure Specialist has failed to show that it is more likely than not that the HAYMKR embodies every limitation of claim 1 of the '343 patent. Pressure Specialist is therefore not entitled to a preliminary injunction. And because contempt requires a showing of infringement by clear and convincing evidence, Pressure Specialist is not entitled to that relief either.

## Conclusion

For the foregoing reasons, the Court denies Pressure Specialist's motion for finding Next Gen in contempt and alternative motion for amendment of the preliminary injunction order to enjoin the manufacturing and sale of Next Gen's HAYMKR product [dkt. no. 54]. The parties are directed to confer regarding necessary revisions to the Local Patent Rules schedule and are to file by July 2, 2020 a joint status report setting out a proposed schedule. The case is set for a status hearing, to be conducted by telephone, on July 7, 2020 at 10:00 a.m. The following call-in number will be used: 888-684-8852, access code 746-1053. Counsel should wait for the case to be called before announcing themselves.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 25, 2020